1
 2025 CO 39 Ralph Cantafio, David Feeder, Lilly Lentz, Mike Lazar, Cantafio & Song PLLC, Mark Fischer, and Patricia Ann Scott, Petitioners: v. Kaylee Schnelle. Respondent: No. 24SC204
Supreme Court of Colorado, En Banc
June 16, 2025

 Certiorari to the Colorado Court of Appeals Court of Appeals
Case No. 23CA1333

 Attorneys for Petitioners Ralph Cantafio, David Feeder, Lilly
 Lentz, Mike

 Lazar,
 Cantafio &Song PLLC, and Mark Fischer: Gordon Rees Scully
 Mansukhani LLP John M. Palmeri John R. Mann William G. Dewey
 Denver, Colorado Attorneys for Petitioner Patricia Ann Scott:
 Coan, Payton &Payne, LLC Brett Payton Greeley, Colorado

 Attorney for Respondent: Clark L. Davidson Steamboat Springs,
 Colorado

 JUSTICE BERKENKOTTER delivered the Opinion of the Court, in
 which CHIEF JUSTICE MARQUEZ, JUSTICE BOATRIGHT, JUSTICE HOOD,
 JUSTICE GABRIEL, JUSTICE HART, and JUSTICE SAMOUR joined.

 OPINION

 BERKENKOTTER, JUSTICE.

 ¶1
This case arises from a dispute over the sale of real
 property. In a prior case, Patricia Ann Scott, the seller of
 a tract of land, sued real estate agent Kaylee Schnelle for
 professional negligence over her alleged mishandling of the
 sale. Schnelle moved for summary judgment before trial,
 arguing that Scott could not prove the necessary elements of
 breach of the professional duty of care, damages, or
 causation. The district court denied the motion, finding that
 there were genuine disputes regarding material facts. The
 case then proceeded to a jury trial. At the close of
 Scott's case, Schnelle moved for a directed verdict,
 which the court denied. The jury returned a verdict in
 Schnelle's favor on the professional negligence claim.

 ¶2
 Schnelle then brought the present case asserting, among other
 things, a claim for malicious prosecution against Scott, the
 attorneys who represented Scott in the prior case, their law
 firm, and members of the law firm ("the
 defendants"). She alleges that the defendants lacked
 probable cause to believe that she was professionally
 negligent and that she "conspired to cheat and take
 advantage of an elderly widowed client with no family."
Schnelle contends that by pursuing baseless litigation, the
 defendants tarnished her reputation in the community. In
 response, the defendants filed a C.R.C.P. 12(b)(5) motion to
 dismiss, arguing that the denial of Schnelle's summary
 judgment and directed verdict motions in the

 previous case established that there was probable cause to
 bring the original action against her and should therefore
 bar her malicious prosecution claim.

 ¶3
The district court disagreed, concluding that the previous
 denial was a factor it could consider in analyzing probable
 cause but that it did not conclusively establish probable
 cause. The court ultimately determined that Schnelle had
 alleged sufficient factual evidence which, if taken as true,
 would support her assertion that the defendants lacked
 probable cause to bring the original professional negligence
 claim against her, so it denied the motion to dismiss. After
 the court of appeals granted the defendants' petition for
 interlocutory appeal pursuant to C.A.R. 4.2, a division of
 the court of appeals affirmed the district court's order
 denying the motion to dismiss. Schnelle v. Cantafio,
 2024 COA 17, ¶ 1, 548 P.3d 1171, 1174.

 ¶4
We granted certiorari to answer whether a court's denial
 of a summary judgment or directed verdict motion in a prior
 civil case raises a rebuttable presumption that there was
 probable cause to bring the original claim.

 ¶5
We conclude that, while the denial of either motion in a
 prior civil case is a factor that a district court
 may consider in ruling on a motion to dismiss in a subsequent
 malicious prosecution case, the prior denial of a summary
 judgment or directed verdict motion does not create a
 rebuttable presumption of probable cause.

 ¶6
 Because the court's orders denying Schnelle's summary
 judgment and directed verdict motions in the professional
 negligence case do not create a rebuttable presumption that
 the defendants had probable cause to bring the original claim
 against her, we affirm the judgment of the court of appeals.

 I.
Facts and Procedural History

 ¶7
 In denying the defendants' motion to dismiss, the
 district court noted that there was no decision from this
 court that was directly on point, but that the court of
 appeals decision in Health Grades, Inc. v. Boyer,
 2012 COA 196M, 369 P.3d 613 (Colo.App. 2010), rev'd
 on other grounds, 2015 CO 40, 359 P.3d 25, was
 "persuasive." There, a division of the court of
 appeals "decline[d] to adopt an allencompassing rule
 that the denial of a motion for summary judgment, or the
 denial of a motion for directed verdict, necessarily bars a
 claim for abuse of process based on a sham litigation
 theory." Health Grades, ¶ 31, 369 P.3d at
 620. Instead, the division held that "a more careful
 analysis, as opposed to application of [a] bright-line
 rule," was necessary. Id. at ¶ 34, 369
 P.3d at 620.

 ¶8
 Similarly, here, the district court declined to adopt a
 bright-line rule, instead concluding that a previous denial
 of a summary judgment or directed verdict motion "is a
 factor in the probable cause analysis." The district
 court went on to find that Schnelle had alleged sufficient
 factual evidence which, if taken as true, would support her
 assertion that the defendants lacked probable cause to bring

 the professional negligence claim against her. It therefore
 denied the defendants' motion to dismiss as to the
 malicious prosecution claim.

 ¶9
The defendants then petitioned the court of appeals pursuant
 to C.A.R. 4.2 on the grounds that the district court's
 ruling on the motion to dismiss addressed an unresolved and
 controlling question of law and that immediate review could
 establish a final disposition of the litigation. A division
 of the court of appeals granted the petition. The defendants
 argued to the division that a trial court's denial of a
 summary judgment or directed verdict motion should be
 considered an absolute bar to a subsequent malicious
 prosecution cause of action as a matter of law or, in the
 alternative, that it should establish a rebuttable
 presumption that there was probable cause to bring the prior
 case. In a unanimous, published opinion, the division
 affirmed the district court's denial of the
 defendants' motion to dismiss the malicious prosecution
 claim. Schnelle, ¶ 1, 548 P.3d at 1174. Among
 other things, the division reasoned that the individual
 circumstances relating to how a particular summary judgment
 or directed verdict motion was resolved would make any
 categorical rule applying a presumption hard to maintain.
Id. at ¶ 32, 548 P.3d at 1179. The denial of
 either or both such motions, the division concluded, should
 instead be a factor that may be considered in determining the
 existence of probable cause. Id. at ¶ 33, 548
 P.3d at 1179.

 ¶10
The defendants then petitioned this court for certiorari
 review, which we granted.[1]

 II.
Analysis

 ¶11
We begin by outlining the relevant standard of review before
 briefly describing the tort of malicious prosecution and the
 standards that guide courts' consideration of summary
 judgment and directed verdict motions.

 A.
Standard of Review and Applicable Law

 ¶12
We review de novo an order denying a motion to dismiss for
 failure to state a claim under C.R.C.P. 12(b)(5). Melat,
 Pressman &Higbie, L.L.P. v. Hannon L. Firm, L.L.C.,
 2012 CO 61, ¶ 16, 287 P.3d 842, 846.

 ¶13
 The tort of malicious prosecution provides a remedy when a
 person "knowingly initiates baseless litigation."
Mintz v. Accident &Inj. Med. Specialists, PC,
 284 P.3d 62, 66 (Colo.App. 2010). To prevail on a civil claim
 for malicious prosecution, a plaintiff must establish: (1)
the defendant's contribution to bringing a prior case
 against the plaintiff; (2) the ending of the previous action
 in favor of

the plaintiff; (3) lack of probable cause; (4) malice; and
 (5) damages. Hewitt v. Rice, 154 P.3d 408, 411
(Colo. 2007).

 ¶14
 In a civil malicious prosecution action, probable cause means
 that the plaintiff in the prior case "in good faith had
 a reasonable belief that [the defendant in the prior case]
 was liable for the claim that was made." Walford v.
 Blinder, Robinson &Co., 793 P.2d 620, 624 (Colo.App.
1990). "The existence of probable cause is alone
 sufficient to relieve a defendant of a charge of malicious
 prosecution." Montgomery Ward &Co. v.
 Pherson, 272 P.2d 643, 645 (Colo. 1954).

 ¶15
Motions for summary judgment "shall be rendered
 forthwith if the pleadings, depositions, answers to
 interrogatories, and admissions on file, together with the
 affidavits, if any, show that there is no genuine issue as to
 any material fact and that the moving party is entitled to a
 judgment as a matter of law." C.R.C.P. 56(c). "In
 determining the propriety of summary judgment, the non-moving
 party is entitled to all favorable inferences that may
 reasonably be drawn from the undisputed facts."
Bayou Land Co. v. Talley, 924 P.2d 136, 151 (Colo.
1996).

 ¶16
"A party may move for a directed verdict at the close of
 the evidence offered by an opponent or at the close of all
 the evidence." C.R.C.P. 50. A motion for a directed
 verdict should be granted "only when the evidence,
 viewed in the light most favorable to the non-moving party,
 'compels the conclusion that reasonable

 persons could not disagree and that no evidence, or
 legitimate inference therefrom, has been presented upon which
 a jury's verdict against the moving party could be
 sustained.'" Mid-Century Ins. Co. v. HIVE
 Constr., Inc., 2025 CO 17, ¶ 20, 567 P.3d 153,
 157-58 (quoting Burgess v. Mid-Century Ins. Co., 841
 P.2d 325, 328 (Colo.App. 1992)).

 B.
Denial of a Summary Judgment or Directed Verdict Motion Is a
 Factor in the Probable Cause Analysis

 ¶17
 With the above principles in mind, we address the
 parties' arguments.

 ¶18
The defendants contend that a trial court's denial of a
 summary judgment or directed verdict motion in a prior case
 should constitute presumptive proof that the
 plaintiff in that case had probable cause to bring the
 action. Thus, if a defendant in a subsequent malicious
 prosecution action filed a motion to dismiss and provided
 evidence of such a denial, the burden would shift and the
 malicious prosecution plaintiff (i.e., the defendant in the
 original action) would have to offer evidence rebutting that
 presumption to defeat the motion to dismiss the malicious
 prosecution claim.

 ¶19
 The rebuttable presumption approach has support in states
 like Maryland, where an intermediate appellate court
 reasoned:

Given that under Maryland common law, suits for malicious use
 of process are disfavored, it is more sensible to treat the
 denial of a motion for judgment as a presumption in favor of
 probable cause, rather than treating it as just a factor in
 the probable cause evaluation. Malicious use of process
 defendants cannot bear the burden of

 proving that the prior action had probable cause. Rather,
 plaintiffs must prove that "the prosecution complained
 of was without 'probable cause,' and unless
 that burden be met there can be no recovery."

Havilah Real Prop. Servs., LLC v. Early, 88 A.3d
 875, 886 (Md. Ct. Spec. App. 2014) (quoting N. Point
 Constr. Co. v. Sagner, 44 A.2d 441, 444 (Md. 1945)). A
 Kansas intermediate appellate court later found
 Havilah persuasive in its own holding that "the
 denial of the dispositive motions in the underlying lawsuit
 established a presumptive bar to a subsequent lawsuit for
 malicious prosecution." Porubsky v. Long, 487
 P.3d 768 (Kan.Ct.App. 2021) (unpublished table decision).

 ¶20
 Schnelle counters that a court's denial of a summary
 judgment motion is an inadequate proxy for later evaluating
 whether a party lacked probable cause. She argues that there
 are multiple reasons that a court might deny such a motion.
She further contends that a court ruling on a summary
 judgment motion cannot assess the credibility of competing
 facts and that judges often have no way of knowing if false
 or misleading facts have been included in the motion.

 ¶21
We agree that there are many reasons why a court might deny a
 motion for summary judgment, not the least of which is that
 "summary judgment is a drastic remedy reserved for those
 situations in which it is clear that the applicable legal
 standard has been satisfied." Dep't of Nat. Res.
 v. 5 Star Feedlot, Inc., 2021 CO 27, ¶ 19, 486 P.3d
 250, 255. Additionally, we question the fairness of applying
 a rebuttable presumption since it can be difficult, in some
 instances, to know just

 how much to read into a court's denial of a summary
 judgment motion. One judge might deny voluminous
 cross-motions for summary judgment with a detailed,
 thoughtful order while another judge might deny similar
 motions with a three-line ruling stating that there are
 disputed issues of material fact. Both orders may, in fact,
 be the result of long hours of review and analysis. It is
 possible that the second judge simply didn't have time to
 "show their work." Or it may be that the first
 judge's order was the result of a great deal more time,
 thought, and effort. In any event, it would be imprudent to
 adopt a categorical rule that would foreclose more careful
 analysis of such vastly different summary judgment rulings.

 ¶22
 Drawing presumptive inferences from a ruling on a motion for
 a directed verdict is even more troubling because such
 verdicts are "disfavored." People in Int. of
 L.S., 2023 CO 3M, ¶ 13, 524 P.3d 847, 851. A motion
 for a directed verdict should be granted "[o]nly in the
 clearest of cases, where reasonable minds can draw but one
 inference from the evidence." Garcia v. Colo. Cab
 Co., 2023 CO 56, ¶ 19, 538 P.3d 328, 332. A trial
 court may appropriately deny a motion for a directed verdict
 and allow the jury to fulfill its role as the finder of fact
 because the court can, if necessary, grant a motion for
 judgment notwithstanding the verdict. See Health
 Grades, ¶ 33, 369 P.3d at 620. We additionally
 observe that, just as with summary judgment rulings, some
 trial courts provide detailed explanations of their directed
 verdict rulings and some do not.

 ¶23
 A rebuttable presumption would, moreover, shift the burden of
 persuasion, potentially requiring a party opposing a motion
 to dismiss to prove why something did not occur, why evidence
 does not exist, or to divine what a trial court judge was
 thinking. Because of the difficulties associated with proving
 a negative, a rebuttable presumption of probable cause could
 become, in some instances, an insurmountable presumption of
 probable cause.

 ¶24
We also have significant concerns about adopting a
 presumption based on a decision that is not generally subject
 to appellate review. See State Farm Mut. Auto. Ins. Co.
 v. Goddard, 2021 COA 15, ¶ 54, 484 P.3d 765, 776
("We do not review a denial of a motion for summary
 judgment because it is not a final order."); see
 also Potter v. Thieman, 770 P.2d 1348, 1350 (Colo.App.
1989) ("[S]ince plaintiffs were not aggrieved by the
 trial court's judgment, they have no standing to appeal
 from it.").

 ¶25
 For all these reasons, we adopt the rationale of both the
 district court and the division below and conclude that,
 while the denial of summary judgment or directed verdict
 motions in a prior civil case is a factor that a
 district court may consider in its probable cause analysis,
 the prior denials do not presumptively establish probable
 cause. This approach allows for a more considered analysis of
 such rulings.

 ¶26
 This conclusion mirrors that of other states like Arizona and
 Vermont. In Arizona, for example, the court held that the
 denial of summary judgment "is a factor that
 the court should consider in determining whether there is or
 is not an objectively reasonable basis for a claim or
 defense; the denial is not, standing alone,
 dispositive of the issue as a matter of law."
Wolfinger v. Cheche, 80 P.3d 783, 791-92
(Ariz.Ct.App. 2003). The Arizona court of appeals observed
 that this approach is more appropriate because "the
 prospect of false or misleading evidence is, unfortunately,
 real. Under such circumstances, judgment as a matter of law
 based on surviving a summary judgment motion may not only be
 inappropriate but directly contrary to the purpose of a
 [wrongful institution of civil proceedings] claim."
Id. at 791.

 ¶27
 Likewise in Vermont, the court determined that, while
 "the denial of a motion for summary judgment
may provide persuasive evidence that the case had
 sufficient merit to establish the element of probable cause
 and thereby defeat a subsequent suit for malicious
 prosecution," the summary judgment order at issue fell
 short of the type of "qualitative merits determination
 necessary to establish probable cause as a matter of law and
 bar any subsequent claim for malicious prosecution."
Bacon v. Reimer &Braunstein, LLP, 929 A.2d 723,
 726-27 (Vt. 2007). This was particularly true, the Vermont
 court said, in cases like the one before it where there were
 complex legal issues being determined, and the trial
 court's

 attention to relatively minor claims may be "perfunctory
 and confined to the marginal evidence available at that stage
 of the proceedings." Id. at 727.

 ¶28
 Our reasoning here is similar to that of the courts in
 Arizona and Vermont. While the denial of a summary judgment
 or directed verdict motion may be highly persuasive, we see
 no prudent reason to establish an inflexible, bright-line
 rule or to shift the burden of persuasion based on a decision
 that is not typically subject to appellate review. Instead,
 we hold that the denial of such a motion is a factor that a
 court may consider in determining if there was probable cause
 to bring the original claim.

 ¶29
 There is also no bright-line rule for courts to follow in
 deciding how much weight to give orders denying summary
 judgment or directed verdict motions. There is, however, some
 guidance to be gleaned from the division's opinion in
 Health Grades and from decisions in other
 jurisdictions. Circumstances deemed relevant to this
 determination by these courts include, but are not limited
 to:

• The type of order (i.e., whether it is a denial of a
 summary judgment or a directed verdict motion). See
 Health Grades, ¶¶ 32-33, 369 P.3d at 620.

• If the order included many details. See
Bacon, 929 A.2d at 727. • Whether the order
 addressed all the elements of all the claims. See
id.

• At what point in the litigation the order was issued.
See Health Grades, ¶¶ 32-33, 369 P.3d at
 620.

• Whether the trial court commented on the strength of
 the evidence. See Bacon, 929 A.2d at 727.

• Whether there are claims that false or misleading
 evidence was involved in defeating the motion. See
Wolfinger, 80 P.3d at 791.

• Whether any relevant testimony was later determined to
 be materially false. See Roberts v. Sentry Life
 Ins., 90 Cal.Rptr.2d 408, 414 (Cal.Ct.App. 1999).

• Whether perjury or fraud was alleged to have occurred
 or actually did occur. See Bacon, 929 A.2d at 726.

 ¶30
 An additional circumstance specific to an order denying a
 motion for summary judgment may include whether the parties
 have completed discovery.

 III.
Conclusion

 ¶31
 Because the court's orders denying Schnelle's summary
 judgment and directed verdict motions in the professional
 negligence case do not create a rebuttable presumption that
 the defendants had probable cause to bring the original claim
 against her, we affirm the judgment of the court of appeals.

---------

[1] Specifically, we granted certiorari on
 the following issue:

1. Whether the court of appeals erred in holding that
 denial of summary judgment or directed verdict in a prior
 civil case does not raise a rebuttable presumption of
 probable cause in a subsequent malicious prosecution
 action.

---------